IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-03432-CBS

DEBRA ROYBAL-SANDOVAL,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

        This action comes before the court pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c), for review of the Commissioner of Social Security's final decision denying Debra Roybal-Sandoval's ("Plaintiff") application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated February 10, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. No. 23). The court has carefully considered the Complaint (filed December 19, 2013) (Doc. No. 1), Defendant's Answer (filed June 5, 2014) (Doc. No. 9), Plaintiff's Opening Brief (filed September 9, 2014) (Doc. No. 17), Defendant's Response Brief (filed September 19, 2014) (Doc. No. 18), the entire case file, the administrative record, and applicable case law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In October 2010, Plaintiff filed an application for SSI, alleging a disability onset date of November 20, 2008. (*See* Social Security Administrative Record (hereinafter "AR") at 194). At the administrative hearing, Plaintiff amended the onset date to October 13, 2010. (AR at 35-36). In her application, Plaintiff alleged she became disabled due to mental disorders, depression, traumatic brain injury, damage to white matter in her brain, and alcohol dementia. *Id*. at 219. Plaintiff was born on May 13, 1952, and was 58 years old on the date of her alleged disability onset. *Id*. at 27. She has completed one year of college and has worked in a variety of jobs including a United States Postal Services letter sorter, a concessions worker, and a clerk/sorter at a thrift store. *Id*. at 27, 37, 220. After her initial application was denied, *id*. at 102, Plaintiff requested a hearing, *id*. at 110, which was held on August 22, 2012, before an Administrative Law Judge ("ALJ"). *Id*. at 33-62.

Plaintiff was represented by counsel at the hearing and testified that she had a brain injury that prevented her from working because she was unable to concentrate or remember things. *Id*. at 39-40. And she testified that she suffered from depression.[1] She also stated that she previously had a drinking problem, but alleged that she had stopped drinking six months prior to the hearing. *Id*. at 38-39. However, Plaintiff also admitted that she had consumed a beer the week before the hearing. *Id*. at 39. And she testified that she smokes marijuana every day. *Id*. at 44.

Plaintiff, who is right-handed, further testified that she had pins in her left wrist that made it more difficult to lift things with her left hand. *Id*. When asked about the injury to her left wrist, Plaintiff testified that she could use her left hand to open a door and pick up coins off of a table, but that she likely could not open a jar. *Id*. at 43. She also testified that she could lift a bag of

---

[1] On appeal, Plaintiff does not take issue with the ALJ's evaluation of her mental impairments.

potatoes or a bag of cat food if she used both hands, but stated that she probably could not lift a gallon of milk for 20 minutes out of every hour of the day. *Id*. at 51.

James B. Greer testified at the hearing as a vocational expert ("VE"). The VE testified that Plaintiff's prior work experience as a letter sorter was classified as "light" by the Dictionary of Occupational Titles exertional guidelines. *Id*. at 60. The ALJ asked the VE to assume hypothetically that an individual, with no exertional limitations could: (1) understand, remember, and carry out only simple instructions; (2) not tolerate public interaction; and (3) not tolerate the stress of production pace work. *Id*. at 60. The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous job as a letter sorter. *Id*.

However, the VE identified four other "medium" exertional jobs — in the occupational cluster of janitors and building cleaners — that someone with those limitations could perform: (1) wall washer; (2) vacuum sweeper; (3) floor waxer; and (4) window cleaner. *Id*. at 60-61. The VE further testified that there were approximately 4,700 of these jobs in Colorado and 290,000 of these jobs nationally. *Id*.

Plaintiff's counsel then posed a second hypothetical in which she asked the VE to assume that the individual would be "limited to only occasional use of the non-dominant extremity." *Id*. at 61. The VE testified that, under this hypothetical, the individual would be unable to perform any of the aforementioned jobs. *Id*.

On September 7, 2012, the ALJ issued his decision denying benefits. *Id*. at 16-32. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[2] At step

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R.

one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since October 13, 2010. *Id*. at 21. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: a history of close head injury, depression, an organic mental disorder secondary to drug and/or alcohol abuse, and alcohol abuse. *Id*. However, the ALJ declined to find that Plaintiff's wrist fracture constituted a severe impairment. *Id*. The ALJ specifically noted that one month after Plaintiff's wrist fracture had been surgically repaired, the fracture was healing and there was no sign of hardware failure. *Id*. The ALJ found that the wrist injury was not expected to last 12 months and, therefore, failed to meet the durational requirement to be considered severe.[3] *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 21-22.

> The ALJ then assessed the following residual functional capacity ("RFC"):
>
>> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out no more than simple instructions, cannot tolerate public interaction, [and] cannot tolerate the stress of production work pace.

*Id*. at 23. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. As it related to Plaintiff's claim of physical disability, the ALJ observed that there was no evidence of any kind to support Plaintiff's allegations of physical pain or deficits. *Id*. at 25. The ALJ also found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not credible." *Id*. at 25.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. *Id*. at 27. At step five, the ALJ found: "[c]onsidering the

---

§ 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] The ALJ, nonetheless, discussed Plaintiff's writs issues in fashioning the RFC. (AR at 23-25).

4

claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 28. Specifically, the ALJ found that Plaintiff could work as a wall washer, vacuum sweeper, floor waxer, or indoor window cleaner. *Id*. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review, and submitted additional evidence that was either duplicative of other evidence or unrelated to the relevant period of time. *Id*. at 1-4. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on December 19, 2013. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007)

(internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

As the court understands her appellate arguments, Plaintiff contends that the ALJ erred in the following ways: (1) the RFC was not supported by substantial evidence[4]; (2) the ALJ failed to properly develop the record; and (3) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. None of these arguments are persuasive.

**A.      Whether the RFC was based on substantial evidence**

The RFC is an assessment of what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. An ALJ must make specific RFC findings based on all the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In determining the scope of a claimant's RFC, an ALJ's assessment must "consider all of [a claimant's] medically

---

[4] This argument overlooks the fact that, at step two, the ALJ found that Plaintiff's wrist condition was not severe. (AR at 21). She offers no argument regarding that issue. But even assuming *arguendo* the ALJ was incorrect in in that conclusion, Plaintiff's contentions regarding the RFC are not persuasive.

6

determinable impairments . . . , including [her] medically determinable impairments that are not severe." 20 C.F.R. § 404.1545. An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms." 20 C.R.F. § 404.1508.

Here, Plaintiff seems to contend that the ALJ's RFC was not supported by substantial evidence. Specifically, she argues that the ALJ "failed to consider the great weight of the evidence in finding that the claimant did not suffer from osteoporosis, osteopenia, and degenerative joint disease."[5] (See Doc. No. 17 at 16). This argument is not fully developed, and apart from citing her own testimony regarding her discomfort and difficulty using her left hand, Plaintiff has done little to substantiate this contention. However, because "[e]vidence is not substantial if it is overwhelmed by other evidence in the record," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005), the court construes this argument as a contention that overwhelming evidence demonstrated that the ALJ should have included limitations of osteoporosis, osteopenia, and degenerative joint disease — as affecting Plaintiff's ability to use her arms and hands — in the RFC. This argument is not well taken.

---

[5] Plaintiff's appellate arguments are not the model of clarity. To the extent that she contends the ALJ erred in failing to *discuss* all of her conditions, this argument must also fail. While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal citation omitted). The ALJ specifically stated that he fashioned the RFC "after careful consideration of the entire record." (AR at 23). The Tenth Circuit has held that where the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he has adequately considered Plaintiff's alleged impairments, the court should take him "at [his] word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (brackets in original). Here, the ALJ's decision contains a detailed discussion of much of the evidence that Plaintiff submitted, a discussion of how the ALJ weighed the evidence, and a thorough account of how the ALJ arrived at his conclusion. Thus, the court takes the ALJ at his word that he considered all of the evidence, even those records that were not explicitly discussed. Any failure to explicitly discuss Plaintiff's osteoporosis, osteopenia, and degenerative joint disease was not error.

Here, as the ALJ noted, the record contains no medical opinion indicating that Plaintiff has any physical limitation related to osteoporosis, osteopenia, or degenerative joint disease. (*See* AR at 25 ("There is no evidence of any kind to support the claimant's allegations of physical pain or deficit.")). Indeed, and quite tellingly, Plaintiff has not cited to any evidence other than her own testimony regarding her ability to use her hands and arms, and her subjective complaints of discomfort. (Doc. No. 17 at 17). However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible" to the extent that they were inconsistent with the RFC. (AR at 25). Furthermore, subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted).

To determine whether pain is disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In this case, the ALJ considered the entire record and concluded that Plaintiff's complaints regarding the severity of her symptoms were not credible. (AR at 25). In reaching this conclusion, the ALJ noted that her statements to her treating providers suggested a far greater capacity for work than she alleged. *Id*. at 25. In November and December 2010, Plaintiff described a relatively robust daily routine of playing with her cats, doing crossword puzzles, watching TV, going for walks, cooking, attending church, and involving herself in parish activities. *Id*. at 660, 648. Furthermore, Plaintiff's own testimony during the hearing belies her

contention that osteoporosis has caused functional limitations in her ability to use her arms. When questioned by her own attorney regarding osteoporosis, Plaintiff testified that she had pain in her neck, calf, left leg, feet, and shoulders. *Id*. at 49-50. She never linked her osteoporosis with her arms or wrists. Moreover, the medical evidence related to Plaintiff's wrist fracture indicated that the injury was healing properly and that there was no hardware failure. *Id*. at 676. And two months following her surgery, Plaintiff stated that her pain was "minimal" and that she had stopped taking her pain medication. *Id*. at 678. Although the doctor instructed Plaintiff not to lift anything heavier than a glass of water, Plaintiff has not cited any medical records demonstrating that this limitation was anything more than a temporary restriction while she healed. Plaintiff bears the burden of demonstrating that she has a disability. *Wall*, 561 F.3d at 1062.

In addition, the ALJ cited evidence that Plaintiff was seeking secondary gains, as opposed to having sincere medical limitations. For example, Plaintiff told a case worker that she did not want her SSI benefits to be denied because she took a job. (AR at 616). And she stated that she wanted to stay in the program at the Mental Health Center of Denver so that she could get SSI benefits. *Id*. at 599. The court agrees with the ALJ that these statements indicate that Plaintiff considered herself capable of working. Thus, the ALJ's credibility determination is supported by specific evidence and will not be overturned on appeal.

Ultimately, Plaintiff's arguments are a request for this court to reweigh the evidence, which it cannot do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Therefore, the court concludes that the ALJ did not err in excluding a limitation based upon osteoporosis, osteopenia, and degenerative joint disease, and that the ALJ's RFC assessment regarding Plaintiff's physical abilities was sufficiently supported by substantial evidence.

**B.      Duty to Develop the Record**

Almost in passing, and without any development or record citations, Plaintiff contends that the ALJ failed to develop the record with regard to her osteoporosis, osteopenia, and degenerative join disease — as these conditions impacted her ability to use her hands. (Doc. No. 17 at 17). This argument fails.

As noted above, Plaintiff bears the burden of proving her disability, and in doing so, "[she] must furnish medical and other evidence of the existence of a disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citing *Bowen v. Tuckert*, 482 U.S. 137, 146 (1987)). But because a social security hearing is non-adversarial, an ALJ has a duty to ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). Thus, an ALJ should "develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996); *see also* 20 C.F.R. § 416.912(d) (requiring an ALJ to develop a claimant's medical history for the 12 months preceding the month in which the application is filed). However, in cases such as this one, where Plaintiff was represented by an attorney at the disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Here, the ALJ specifically inquired whether he had all of the documentary evidence that he needed to decide the case; Plaintiff's counsel stated that he did. (AR at 36). And the court notes that the administrative record does, in fact, include medical records related to Plaintiff's

wrist. Although these records demonstrate that Plaintiff has osteoporosis, none of them indicate that Plaintiff would be limited by this condition. Indeed, as previously discussed, Plaintiff's records demonstrate that she was sufficiently recovering from her wrist fracture.[6] On appeal, Plaintiff has made no showing that anything of significance was missing from the record and, therefore, the court concludes that there was an adequate record by which the ALJ could decide this case.

## C. Sufficient Jobs in the National Economy that Plaintiff can Perform

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 28).

Plaintiff argues that this finding is not supported by substantial evidence. (Doc. No. 17 at 17-18). The court disagrees. At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the aspects of the RFC ultimately adopted by the ALJ. (AR at 60-61). The VE testified that someone with those restrictions could work as a wall washer, vacuum sweeper, floor waxer, and window cleaner. *Id*.

---

[6] If Plaintiff contends that the ALJ should have ordered a consultative examination, the court, nonetheless, perceives no error. In deciding whether an ALJ has a duty to order such an exam, "the starting place must be some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167. Isolated and unsupported comments are insufficient. *Id*. Here, there is no objective evidence — outside of Plaintiff's testimony and subjective statements to medical providers — to support her alleged inability to use her hands. Thus, the ALJ did not err in failing to order a consultative exam. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990) (refusing to remand for a consultative examination where the plaintiff had produced no objective evidence that he suffered from depression).

Plaintiff contends that the hypothetical posed by the ALJ was erroneous. (Doc. No. 17 at 17-18). However, as discussed above, the court has concluded that the RFC was based on and supported by substantial evidence. Because the hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ did not err in posing its hypothetical.

Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the national economy that Plaintiff could perform — is supported by substantial evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Roybal-Sandoval was not disabled within the meaning of Title XVI of the Social Security Act and, therefore, not eligible to receive Supplemental Security Income benefits.  Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his or her own fees and costs.

DATED at Denver, Colorado, this 3rd day of September, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge